**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALICE KRIEGEL, | ) | |
| | ) | |
| *Plaintiff*, | ) | No. 24 C 467 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| KRISTI NOEM, Secretary of the Department of | ) | |
| Homeland Security; KEVIN RIDDLE, Chicago | ) | |
| Field Office Direction, U.S. Citizenship and | ) | |
| Immigration Service; and | ) | |
| U.S. CITIZENSHIP AND IMMIGRATION | ) | |
| SERVICE, | ) | |
| | ) | |
| *Defendants*. | | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Alice Kriegel seeks review of the denial of her application for naturalization by Defendants Kristi Noem[1], Kevin Riddle, and the United States Citizenship and Immigration Services (collectively, "Defendants") pursuant to 8 U.S.C. § 1421(c). Before the Court are the Parties' cross-motions for summary judgment. For the reasons set forth below, Kriegel's Motion for Summary Judgment [33] is denied and Defendants' Motion for Summary Judgment [32] is granted.

**BACKGROUND**

**I.     Compliance with Local Rule 56.1**

Local Rule 56.1 sets out a procedure for presenting facts pertinent to a party's request for summary judgment. LR 56.1 (N.D. Ill.). Local Rule 56.1 requires the party moving for summary judgment to submit a statement of material facts and a supporting memorandum of law. LR

---

[1] Defendant Kristi Noem was substituted for Alejandro Mayorkas, former Secretary of the Department of Homeland Security. (Dkt. 32-2 ¶ 2); (Dkt. 33-2 ¶ 4).

1

56.1(a)(1), (2) (N.D. Ill.). Kriegel attached several exhibits to her Response to Defendants' Local Rule 56.1 Statement of Facts—a chart purporting to show the travel history of Kriegel's husband, a copy of the Articles of Incorporation for the business co-owned by Kriegel and her husband, and a copy of that business's "Employer's and Contribution and Wage Report" from 2017 to 2024. (Dkts. 39-2. 39-3, 39-4, 39-5). Kriegel also submitted a declaration from her counsel describing the exhibits. (Dkt. 39-2). Defendants ask the Court to strike the exhibits because they do not comply with Local Rule 56.1 and are inadmissible. (Dkt. 1-2). Local Rule 56.1(b)(3) provides that the party opposing summary judgment must file a response to the movant's statement of facts that contains, in part, a statement of any additional facts with references to supporting evidence. LR 56.1(b)(3) (N.D. Ill.). Kriegel only attached exhibits to her Response, she did not file a statement of additional facts referring to any of the additional evidence. (Dkt. 39). This does not comply with Local Rule 56.1.

Moreover, the exhibits are inadmissible. Evidence offered at summary judgment must be admissible to the same extent as at trial. *Baines v. Walgreen Co.*, 863 F.3d 656, 662 (7th Cir. 2017); Fed. R. Civ. P. 56(c)(2). To be admissible, "[d]ocuments must be authenticated by an affidavit that lays a proper foundation for their admissibility, even at the summary judgment stage." *Steffek v. Client Servs.*, Inc., 948 F.3d 761, 769 (7th Cir. 2020). None of the documents attached to Kriegel's response have been properly authenticated because the affidavit is from Kriegel's counsel, not from Kriegel or her husband. *See, e.g., Mechling v. Operator of Website Muaythaifactory.com*, 2021 WL 3910752, at *2 (N.D. Ill. Sept. 1, 2021) (an attorney affidavit is not the proper vehicle to authenticate documents where it is not clear whether the attorney has firsthand knowledge of the information therein); *Milo Enters., Inc. v. Bird-X, Inc.*, 2022 WL 874625, at *2 (N.D. Ill. Mar. 24, 2022) (finding declaration from plaintiff's counsel to be insufficient supporting evidence at

summary judgment). Accordingly, the Court will not consider these exhibits.

## II. Facts

The following facts are undisputed unless otherwise indicated.

### A. Kriegel's Background

Kriegel is a citizen of Germany. (Dkt. 32-2 ¶ 1); (Dkt. 33-2 ¶ 3). She has been a lawful permanent resident of the United States since January 19, 2010. (Dkt. 33-2 ¶ 12). Kriegel married John Gus Manaves, a U.S. citizen, on January 9, 2009. (Dkt. 32-2 ¶ 2); (Dkt. 33-2 ¶ 12). Together, they have two daughters, both U.S. citizens, ages 15 and 12. (Dkt. 32-2 ¶ 2); (Dkt. 33-2 ¶ 40). Kriegel and Manaves currently own a town home in Chicago, Illinois. (Dep. of Alice Kriegel, Ex. A, Dkt. 33-4 at 18:21-19:4); (Dkt. 33-2 ¶ 29). Kriegel testified that she and her family have lived in this home since 2022. (Dkt. 33-4 at 17:20-18:6, 19:5-7). From 2013 to 2022, Kriegel and her husband owned a condominium in Chicago, Illinois. (Dkt. 33-2 ¶ 26). Kriegel testified that she and her family lived there during that time. (Dkt. 33-4 at 18:9-20, 19:8-10).

Kriegel and Manaves are co-owners of Mana, Inc. ("Mana"), an architecture firm. (Dkt. 32-2 ¶ 18); (Dkt. 33-2 ¶ 31). They started Mana in 2012. (Dkt. 33-2 ¶ 31). Manaves also owns Scalaplus, Inc. ("Scalaplus"). (Dkt. 32-2 ¶ 22); (Dkt. 33-2 ¶ 34). Mana and Scalaplus share a main office in Chicago, Illinois and an office in Kiel, Germany. (Dkt. 32-2 ¶¶ 19, 22); (Dkt. 33-2 ¶¶ 31, 34, 38). Kriegel has worked at Scalaplus since 2016. (Dkt. 33-2 ¶ 36). Mana and Scalaplus are connected; Mana does design work, and Scalaplus consults on larger projects. (Dkt. 33-2 ¶ 35). Through the two companies, Kriegel and Manaves work on architecture projects together. (Dkt. 32-2 ¶ 24). Kriegel works at the Chicago office two-to-three days per week when she is in the United States, and she works remotely when she is in Germany. (Dkt. 33-2 ¶ 37). Manaves works from the Kiel office when he is in Germany. (Dkt. 33-4 at 41:24-

3

42:7).

Kriegel is licensed as an architect in Germany, but not in the United States. (Dkt. 32-2 ¶ 25); (Dkt. 33-2 ¶ 30). For projects in the United States, Kriegel drafts designs, and Manaves, who is a licensed architect in Illinois, stamps the final drawings. (Dkt. 33-2 ¶ 30). This is a common practice in the architecture industry. (Dkt. 33-4 at 96:21-97:3). Mana has never had any projects outside of the United States, while Scalaplus has had several projects in Germany. (Dkt. 33-2 ¶ 38). Since January 2017, Kriegel has never been employed in Germany. (Dkt. 33-2 ¶ 39).

Kriegel's mother, father, and brother live in Germany. (Dkt. 33-2 ¶¶ 44, 46). In June 2016, Kriegel's mother broke her wrists and nose in a series of falls. (Dkt. 32-2 ¶ 7); (Dkt. 33-2 ¶ 45). Kriegel went to Germany in 2016 for two-to-three months to care for her mother after her injuries. (Dkt. 32-2 ¶ 8); (Dkt. 33-2 ¶ 48). Kriegel returned to Germany on June 17, 2017, and stayed there for 201 days to care for her mother. (Dkt. 32-2 ¶ 9); (Dkt. 33-2 ¶ 49); (Dkt. 33-4 at 54:22-55:1). Kriegel also went to Germany at this time because she had enrolled in a doctorate program at the Christian-Albrecht University in Kiel, Germany to pursue a Ph.D. in historical architecture, and because Manaves was participating in a program in Holland and Germany. (Dkt. 32-2 ¶¶ 15-16); (Dkt. 33-2 ¶¶ 51-53); (Dkt. 33-4 at 54:22-55:1). The doctorate program required Kriegel to spend extended periods of time in Kiel to conduct research, meet with her professor, and study archival work. (Dkt. 32-2 ¶ 17); (Dkt. 33-2 ¶ 54). Kriegel testified that she did not work during this period because she started her Ph.D. (Dkt. 33-4 at 60:19-61:2). Kriegel's daughters came with her, and Manaves visited on most weekends from his program. (Dkt. 32-2 ¶¶ 11, 14-15); (Dkt. 33-2 ¶ 41); (Dkt. 33-4 at 59:7-13). Kriegel and her family returned to the United States on January 5, 2018 after spending the holidays with Kriegel's parents. (Dkt. 32-2 ¶ 6); (Dkt. 33-2 ¶ 49).

Kriegel went to Germany on several other extended trips between 2017 and 2025 to care

4

for her mother and finish her Ph.D. (Dkt. 32-2 ¶¶ 6, 27); (Dkt. 33-2 ¶ 56). Between January 21, 2017 and January 21, 2020, Kriegel was outside of the United States for a total of 544 days during the following periods: April 8, 2017 to April 22, 2017; June 17, 2017 to January 5, 2018; March 24, 2018 to April 7, 2018; July 8, 2018 to January 4, 2019; April 13, 2019 to April 26, 2019; August 8, 2019 to October 3, 2019; and October 6, 2019 to December 28, 2019. (Dkt. 32-2 ¶ 6). Between January 21, 2020 and April 15, 2025, Kriegel spent approximately 1,548 days in Germany over eleven stays, each one less than six months.[2] (Dkt. 32-4); (Dkt. 39-1 at ¶ 27).

Kriegel's husband and daughters travel and stay with her whenever she is in Germany. (Dkt. 32-2 ¶ 11); (Dkt. 33-4 at 29:7-9). They always stay at Kriegel's parents' home. (Dkt. 32-2 ¶ 10); (Dkt. 33-2 ¶ 56). From January 2017 to June 2020, Kriegel's daughters attended school in Kiel when the family was in Germany, and in Chicago when the family was in the United States. (Dkt. 32-2 ¶ 12); (Dkt. 33-2 ¶ 41); (Dkt. 33-4 at 65:6-75:19). As of April 2025, they had been enrolled in and attending school in Kiel since August 2020. (Dkt. 32-2 ¶ 13); (Dkt. 33-4 at 65:6-75:19). Kriegel testified that she intends to re-enroll her daughters in schools in Chicago upon the family's return to the United States. (Dkt. 33-2 ¶¶ 42, 57); (Dkt. 33-4 at 24:17-20). At the time of her deposition in April 2025, Kriegel and her family had come to the United States for Kriegel's deposition and because Manaves's father was in the hospital, but they intended to return to Germany after. (Dkt. 33-2 ¶ 58); (Dkt. 33-4 at 23:20-25:24). Kriegel finished her Ph.D. program in 2025, but is planning to publish a book of her research. (Dkt. 33-2 ¶ 55).

Additionally, Kriegel owns two properties in Kiel that she inherited from family members

---

[2] Kriegel was in Germany during the following periods: July 8, 2020 to December 13, 2020; December 16, 2020 to June 13, 2020; July 23, 2021 to January 3, 2022; January 5, 2022 to June 26, 2022; August 9, 2022 to January 28, 2023; January 31, 2023 to July 26, 2023; August 22, 2023 to January 26, 2024; January 29, 2024 to March 28, 2024; April 26, 2024 to July 24, 2024; August 27, 2024 to December 29, 2024; and January 5, 2025 to April 12, 2025. (Dkt. 32-4); (Dkt. 39-1 at ¶ 27)

and currently rents out. (Dkt. 33-12 at 5). She owns a car in Chicago, and her husband owns a car in Germany. (Dkt. 33-4 at 89:4-13). She adopted a dog in Germany four years ago, and she brings the dog with her when she comes to the United States. (Dkt. 32-2 ¶ 30); (Dkt. 33-4 at 11:10-12:13). Kriegel has been a member of a yacht club in Kiel for 40 years and makes annual payments to maintain her status. (Dkt. 33-4 at 92:19-94:2). She is also a member of the Art Institute of Chicago. (*Id.* at 94:13-14, 101:16-22). Kriegel has voted in the last two federal elections in Germany. (Dkt. 33-4 at 94:19-10). She has been making annual payments to a pension fund in Germany since 2003. (*Id.* at 90:5-91:1). In 2019, Kriegel obtained permission to retain her German citizenship. (*Id.* at 86:8-88:5). The permission was set to expire in May 2025, and Kriegel testified that she did not intend to extend it. (*Id.* at 88:9-15). Manaves has had a residence permit for the last four years that authorizes him to reside in Germany. (Dkt. 32-2 ¶ 29).

### B. Kriegel's Application for Naturalization

On January 21, 2020, Kriegel applied for naturalization by submitting an N-400 Application for Naturalization. (Dkt. 33-2 ¶ 13). She is seeking naturalization as the spouse of a U.S. citizen with whom she resides. (Dkt. 32-2 ¶ 4). Kriegel underwent an examination related to her application on July 20, 2021, and passed the English and civics test. (Dkt. 33-2 ¶¶ 14, 25). She received a request for additional evidence six days later, which she responded to on October 22, 2021. (*Id.* ¶ 15).

On March 30, 2022, the U.S. Citizen and Immigration Services ("USCIS") denied Kriegel's application for naturalization. (Dkt. 33-2 ¶ 16); (Ex. C, Dkt. 33-6). The USCIS concluded that Kriegel's 201-day absence from the United States in 2017 and 2018 broke the continuity of her residence, and that she failed to establish that she did not abandon her residence during this period. (Ex. C, Dkt. 33-6 at 3). In Kriegel's favor, the USCIS noted that maintained access to her

United States abode and did not terminate her United States employment during the absence. (*Id.* at 7). These facts were outweighed, however, by evidence showing that Kriegel continued her work in Germany, equally maintained an abode in Germany, and Kriegel's immediate family did not remain in the United States during her absence. (*Id.*). The USCIS also found that Kriegel's 201-day absence, together with her other trips to Germany lasting under six months and her retention of her German citizenship, called into question whether the United States or Germany was her "principal dwelling place." (*Id.*).

Kriegel timely appealed the denial of her naturalization application, and attended a hearing related to her appeal in August 2023. (Dkt. 33-2 ¶¶ 17-18). On September 21, 2023, the USCIS affirmed the denial of Kriegel's application for naturalization for failure to provide sufficient evidence and legal grounds to overcome the original determination that Kriegel broke the continuity of her residence. (Dkt. 33-2 ¶ 18).

## LEGAL STANDARD

### I. Summary Judgment

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see, e.g., Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 485 (7th Cir. 2019). A material fact is genuinely disputed when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Daugherty v. Page*, 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). At this stage, the Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Summary judgment should be denied when "a reasonable trier of

fact could find in favor of the non-moving party on the evidence submitted[.]" *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016). Where parties file cross-motions for summary judgment, the standard of decision does not change. *Selective Ins. Co. of S.C. v. Target Corp.*, 845 F.3d 263, 265 (7th Cir. 2016), *as amended* (Jan. 25, 2017). The Court must "tak[e] the facts in the light most favorable to the non-movant, first for one side and then for the other." *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Loc. Union 150, AFL-CIO*, 335 F.3d 643, 648 (7th Cir. 2003).

## II.     Section 1421(c)

District courts review a denied application for naturalization *de novo*. 8 U.S.C. § 1421(c); *see also O'Sullivan v. U.S. Citizenship & Immigration Servs.*, 453 F.3d 809, 812 (7th Cir. 2006). It is appropriate for courts to conduct this review on a motion for summary judgment. *See, e.g., Kariuki v. Tarango*, 709 F.3d 495, 500 (5th Cir. 2013); *Lucaj v. Dedvukaj*, 13 F. Supp. 3d 753, 764 (E.D. Mich. 2014); *Yeshiambel v. United States Citizenship & Immigr. Servs.*, 733 F. Supp. 3d 1112, 1116 (D. Kan. 2024). The burden is on the applicant to show his or her eligibility for naturalization, and all "doubts should be resolved in favor of the United States and against the claimant." *Berenyi v. Dist. Dir., Immigration & Naturalization Serv.*, 385 U.S. 630, 636-37 (1967). An applicant must prove his or her eligibility by a preponderance of the evidence. *See Plewa v. I.N.S.*, 77 F. Supp. 2d 905, 908-09 (N.D. Ill. 1999) (citing *Berenyi*, 385 U.S. at 637). Courts do not have equitable authority to naturalize applicants who are ineligible for naturalization as a matter of law. *See INS v. Pangilinan*, 486 U.S. 875, 885 (1988).

## DISCUSSION

United States citizenship is acquired either by birth or by naturalization. *Lopez Ramos v. Barr*, 942 F.3d 376, 380 (7th Cir. 2019) (citing *Miller v. Albright*, 523 U.S. 420, 423, 118 S.Ct.

8

1428, 140 L.Ed.2d 575 (1998)). The right to become an American citizen is "a precious one," so there must be "strict compliance with all the congressionally imposed prerequisites before conferring citizenship." *Fedorenko v. U.S.*, 449 U.S. 490, 506-07 (1981). Under Section 1427 of the Immigration and Nationality Act ("INA"), to qualify for naturalization, an individual must be a lawful permanent resident and demonstrate that she has: (1) resided continuously in the United States for at least five years immediately prior to applying for naturalization and has been physically present in the United States for periods totaling at least half of that time; (2) resided continuously within the United States from the date of application up to the time of admission to citizenship; and (3) during all of these periods, "has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well-disposed to the good order and happiness of the United States." 8 U.S.C. § 1427(a)(1). If the individual is married to an American citizen, the pre-application continuous residency requirement is three years instead of five. 8 U.S.C. § 1430(a); *see also Stoiljkovic v. U.S. Citizenship & Immigr. Servs.*, 2025 WL 4291707, at *2 (N.D. Ill. June 16, 2025) ("Under § 1430, a foreign national who is married to a U.S. citizen may file an expedited application for naturalization."). An individual's "residence" for the purpose of naturalization is her "principal actual dwelling place in fact, without regard to intent." 8 U.S.C. § 1101(a)(33); *see also* 8 C.F.R. § 316.5(a)).

Any absence from the United States for more than six months but less than one year immediately preceding the date of filing of a naturalization application breaks the continuity of an applicant's residence. 8 U.S.C. § 1427(b); *see also Alvear v. Kirk*, 87 F. Supp. 2d 1241, 1242 (D.N.M. 2000) ("An applicant cannot be absent from the United States for more than six months without having to prove he or she did not abandon their residence."). An applicant may overcome this presumption by establishing that she did not "in fact abandon [her] residence" in the United

9

States during the absence. *Id.* The types of evidence that may be used include, *but are not limited to*, evidence that during the absence: (1) the applicant did not terminate her employment in the United States; (2) the applicant's family remained in the United States; (3) the applicant retained full access to her United States abode; and (4) the applicant did not obtain employment while abroad. 8 C.F.R. § 316.5(c)(1)(i) (emphasis added). If an individual fails to rebut the presumption of abandonment, they are not eligible for naturalization. *See United States v. Ahmed,* 735 F. App'x 863, 870 (6th Cir. 2018) (affirming district court's finding that plaintiff was ineligible for naturalization where a trip abroad of over six months broke the continuous residence requirement and plaintiff failed to rebut the "presumption of ineligibility").

The only requirement at issue here is whether Kriegel has maintained a continuous residence in the United States. The applicable time period is January 21, 2017, three years from when Kriegel applied for naturalization, to the present. *See* 8 U.S.C. §§ 1427(a), 1430(a). Defendants argue that Kriegel's trip to Germany in 2017 and 2018 broke the continuity of her residence in the United States. (Dkt. 32 at 5-8). In the alternative, Defendants argue that all of Kriegel's trips to Germany, when viewed together, demonstrate that her principal residence is in Germany, not the United States. (*Id.* at 8-10). Kriegel contends that, despite the time she has spent in Germany since applying for naturalization, she has maintained residency in the United States under the relevant laws. (Dkt. 33 at 5-13).

First, Kriegel's trip to Germany from June 17, 2017 to January 5, 2018 triggers the presumption under § 1427(b) that she abandoned her residence in the United States because it exceeded six months. *See* 8 U.S.C. § 1427(b); *United States v. Allouche*, 703 F. App'x 241, 245 (5th Cir. 2017) ("Absences from the United States for more than six months during [the period immediately prior to application] are presumed to destroy the continuity of residence."). The

10

parties dispute whether Kriegel has presented sufficient evidence to overcome this presumption. (Dkt. 32 at 5-8); (Dkt. 33 at 5-11).

Following guidance from courts that have considered this issue, the Court begins with an analysis of the § 316.5(c)(1)(i) factors. *See, e.g., Hassoun v. Barr*, 2019 WL 13214777, at *3 (D. Conn. July 31, 2019); *Sharma v. U.S. Dep't of Homeland Sec.*, 2009 WL 10697616, at *4-5 (S.D. Tex. Sept. 11, 2009). The first and fourth factors deal with employment—whether the applicant terminated her employment in the United States, and whether the applicant obtained employment abroad. § 316.5(c)(1)(i)(A, D). Several courts have found continuous residency broken where a plaintiff worked abroad and did not maintain any employment in the United States during an absence greater than six months. *See, e.g. Sharma*, 2009 WL 10697616, at * 5; *Khan v. United States Citizenship & Immigr. Servs.*, 2019 WL 1323688, at *5 (S.D. Fla. Mar. 25, 2019), *aff'd*, 781 F. App'x 977 (11th Cir. 2019). In comparison, a court in the District of Massachusetts did not hold the plaintiff's termination from her United States employment against her because she was in an academic program during her extended absence abroad. *Li v. Chertoff*, 490 F. Supp. 2d 130, 133 (D. Mass. 2007).

The facts of Kriegel's employment make the analysis of these factors more complicated. As a preliminary matter, it is unclear whether Kriegel was employed during the 201-day period in question. The parties do not dispute that Kriegel has been continuously employed as an architect for Mana and Scalaplus. (Dkt. 32-2 ¶¶ 18, 24); (Dkt. 33-2 ¶¶ 31, 36). Yet, Kriegel also testified that she did not work during the 201-day absence from the United States because she had started her doctorate program in Germany. (Dkt. 33-4 at 60:19-61:2). Resolving this contradiction is not necessary, however, because the issue is whether she was employed in the United States or abroad, not whether she was employed at all. *See* 8 C.F.R. § 316.5(c)(1)(i)(A, D). Both Mana and Scalaplus

11

have offices in the United States and Germany. (Dkt. 32-2 ¶¶ 19, 22); (Dkt. 33-2 ¶¶ 31, 34, 38). Kriegel is licensed as an architect in Germany but not in the United States, though she is able to work on projects based in both countries. (Dkt. 32-2 ¶ 25); (Dkt. 33-2 ¶ 30). Additionally, because Kriegel works remotely in Germany while she is there, she presumably would have been working in Germany during her 201-day absence, if she did in fact continue her employment. (Dkt. 33-2 ¶ 37). While Scalaplus has done projects in Germany, Kriegel did not specify what work, if any, she did during this period, or whether it was for a United States or German project. (Dkt. 33-2 ¶ 38). The undisputed facts indicate, at most, that Kriegel maintained employment in the United States and Germany while simultaneously pursuing a doctorate degree in Germany during her 201-day absence. As such, the first and fourth factors of § 316.5(c)(1)(i) do not conclusively weigh for or against Kriegel.

Under the second factor, an applicant can use evidence that their immediate family remained in the United States to establish that they did not disrupt the continuity of their residence. 8 C.F.R. § 316.5(c)(1)(i)(B). Kriegel does not dispute that her immediately family did not remain in the United States during her 201-day absence; her husband was in Europe for a work program, and her children were with her Germany. (Dkt. 32-2 ¶¶ 11, 14-15); (Dkt. 33-2 ¶ 41); (Dkt. 33-4 at 59:7-13). Instead, Kriegel relies on *Li v. Chertoff* to argue that an applicant's immediate family members accompanying them abroad does not indicate the disruption of continuous residence. (Dkt. 41 at 3-4). In *Li*, the Court held that the plaintiff had not abandoned her United States residency during her absences of more than six months when she was in Canada for a dentistry program. 490 F. Supp. 2d at 131-34. The Court concluded that § 316.5(c)(1)(i)(B) weighed in the plaintiff's favor even though her husband travelled with her to Canada during her absences because most of her other family lived in the United States. *Id.* at 133.

12

Unlike *Li*, Kriegel has no other family in the United States—her mother, father, and brother live in Germany. (Dkt. 33-2 ¶¶ 44, 46). Other courts have held that this factor weighed against plaintiffs under similar circumstances. *See, e.g., Abdul-Khalek v. Jenifer,* 890 F. Supp. 666, 670 (E.D. Mich. 1995) (denying naturalization based, in part, on fact that plaintiff's children and husband accompanied her to Lebanon during her absences from the United States); *Hassoun*, 2019 WL 13214777 at *3 (same where plaintiff's wife and children remained in Syria with plaintiff during his 11-month absence from the United States); *Khan*, 2019 WL 1323688, at *5 (same where plaintiff's wife and children remained with plaintiff in Pakistan during his absences from the United States). The undisputed evidence indicates that Kriegel's family did not remain in the United States during her absence, so this factor does not help Kriegel overcome the presumption of abandonment.

The only factor clearly in Kriegel's favor is her uninterrupted access to her United States abode during her 201-day absence. *See* 8 C.F.R. § 316.5(c)(1)(i)(C). Kriegel and her husband owned a condominium in Chicago, Illinois from 2013 to 2022, and she testified that this is where her family lived when they were in the United States during this time. (Dkt. 33-2 ¶ 26); (Dkt. 33-4 at 18:9-20, 19:8-10). Additionally, she never rented this property out. (Dkt. 33-2 ¶ 27). These facts indicate that Kriegel retained full access to her United States residence during the 201-day period she and her family were abroad. *But see Aideyan v. McAleenan*, 2021 WL 2763860, at *5 (S.D. Tex. Apr. 8, 2021) (plaintiff did not satisfy continuous residency requirement where he lived in France full-time and no longer maintained a residence in the United States); *Hassoun*, 2019 WL 1321477, at *4 (plaintiff not have full access to a United States residence during his absence where evidence indicated only that he shared a room with another individual when he was in Connecticut).

The Court also considers evidence beyond the factors listed in 8 C.F.R. § 316.5(c)(1)(i). Not only did Kriegel's daughters stay with her in Germany during her absence, but she enrolled them in German schools. (Dkt. 32-2 ¶ 12); (Dkt. 33-2 ¶ 41); (Dkt. 33-4 at 65:6-75:19). Additionally, Kriegel herself enrolled in a doctorate program at German university. (Dkt. 32-2 ¶ 16); (Dkt. 33-2 ¶ 53). Considering all the evidence as a whole, a reasonable trier of fact could find that Kriegel fails to rebut the presumption that she abandoned her residence in the United States during the 201-day period she was in Germany in 2017 and 2018. *See Berenyi*, 385 U.S. at 637 ("This Court has often stated that doubts should be resolved in favor of the United States and against the claimant.") (internal citation omitted).

Even if Kriegel's 201-day absence prior to the filing of her naturalization application was not an issue, Kriegel would still be ineligible for naturalization because of her multiple, shorter absences from the United States. Kriegel argues that the Court should not consider any of her other trips to Germany because they did not exceed six months. (Dkt. 33 at 12-13). In support, she claims that no statute expressly authorizes an adjudicator to consider absences of less than six months when determining whether the continuous residence requirements are satisfied.[3] (Dkt. 39 at 10). Yet, Sections 1427(a) and 1430(a) of the INA are clear: applicants married to U.S. citizens must "resid[e] continuously" in the United States for three years prior to applying for naturalization up until the time of admission. 8 U.S.C. §§ 1427(a); 1430(a). Additionally, an applicant's residence for the purpose of naturalization is their principal, actual dwelling place. *See* 8 U.S.C. §

---

[3] Kriegel makes a separate argument on this point based on the now-defunct *Chevron* doctrine. (Dkt. 33 at 12-13). She claims that the only basis for considering absences of less than six months is language in the USCIS's Policy Manual allowing a USCIS officer to review such absences. (*Id.* at 11-12). Based on the Supreme Court's recent decision in *Loper Bright Enters. v. Raimondo,* 603 U.S. 369 (2024), Kriegel argues that that Court cannot consider the guidance from USCIS in its continuous residency analysis. (*Id.*). The Court need not address this argument because it is relying on case law and statutory text, not any agency's interpretation of the law. *See, e.g. Vicki A. v. Bisignano*, 2026 WL 323513, at *2 (N.D. Ill. Feb. 6, 2026).

1101(a)(33).

Other courts have interpreted these provisions to mean that absences of less than six months can break continuity of residence because such absences may indicate that an applicant did not maintain their principal dwelling place in the United States. *See Raynolds v. Napolitano*, 2013 WL 2149702, at \*3 (D. Conn. May 16, 2013) (an applicant does not meet the continuous residency requirement if their frequent absences from the United States resulted in a change of residence for the purpose of naturalization); *Sharma*, 2009 WL 10697616, at \*3 ("While 8 U.S.C. § 1427 assumes a break in continuity of residence in specific scenarios (e.g. absences longer than six months), it does not preclude a finding of a break in residency absent those circumstances."); *Iqbal*, 397 F.Supp.3d at 283 ("[T]o conclude that an applicant's principal, actual dwelling place in fact has continuously remained in the United States even though he chose to live abroad for the vast majority of the statutorily required period. . . would render § 1427(a)(2)'s continuity of residence requirement superfluous."); *McElhaney v. U.S. Citizenship & Immigr. Servs.*, 2010 WL 4365819, at \*4 (D. Conn. Oct. 20, 2010) ("To continuously reside in the United States necessarily requires an applicant to "reside" in the United States.").

Even if Kriegel's shorter absences from the United States do not presumptively disrupt her continuity of residence, they are relevant to the Court's analysis of the continuous residence requirements. *See, e.g., Iqbal*, 397 F.Supp.3d at 283 ("[A]ll of Plaintiff's frequent and extended absences from the United States are appropriately considered in determining whether he satisfied [the continue residence requirement]."); *Khan*, 2019 WL 1323688, at \*6 (concluding that a court may consider regular and frequent trips abroad that do not exceed six months in determining whether there was a break in a naturalization applicant's residency).

Kriegel spent 2,092 days in Germany over 18 trips from January 21, 2017, three years

15

before she applied for naturalization, to April 15, 2025, the date of her deposition in this case. (Dkt. 32-2 ¶ 6); (Dkt. 32-4); (Dkt. 39-1 at ¶ 27). Thus, Kriegel remained outside of the United States for almost 70% of this eight-year period. This alone could be enough to conclude that Kriegel's principal, actual dwelling place is in Germany, not the United States. *See Iqbal*, 397 F.Supp.3d at 283-84 ("No rational factfinder could conclude that the United States remained [the plaintiff's] principal, actual dwelling place in fact when the plaintiff "lived in the United States just 18% of the time.") (internal citations omitted); *Reynolds*, 2013 WL 2149702, at *3 (concluding that Connecticut was not the plaintiff's actual dwelling place in fact where the plaintiff was only in the United States for 52 days over a three-year period after applying for naturalization); *Aideyan*, 2021 WL 2763860, at *5-6 (considering amount of time plaintiff was outside of the United States in determining that did not meet continuous residency requirement under § 1427(a)).

There are several other undisputed facts that suggest Kriegel does not meet the continuous residency requirements of § 1427(a)(2) and § 1430. As discussed above, Kriegel's children and husband were with her in Germany during all of her extended trips. (Dkt. 32-2 ¶ 11); (Dkt. 33-4 at 29:7-9). Her husband worked from his company's German office while there, and their children were enrolled in German schools. (Dkt. 32-2 ¶ 12); (Dkt. 33-2 ¶ 41); (Dkt. 33-4 at 41:24-42:7, 65:6-75:19). While abroad, Kriegel was working towards her Ph.D. at a German university and working on architecture projects in Germany and the United States. (Dkt. 32-2 ¶ 24); (Dkt. 33-2 ¶¶ 37, 53, 56). Kriegel voted in German elections, adopted a dog in Germany, pays into a German pension fund, is a member of a German social club, and receives rental income from two properties she owns in Germany through inheritance. (Dkt. 32-2 ¶ 30); (Dkt. 33-4 at 11:10-12:13, 90:5-91:1, 92:19-94:2, 94:19-10) (Dkt. 33-12 at 5). Kriegel's ownership of a home in the United States may be a factor in her favor, but the "balance of [her] contacts abroad outweighs [her] comparatively

minimal contacts here and further undermines any argument that the United States has remained" her primary residence. *Iqbal*, 397 F.Supp.3d at 285; *see also Khan*, 2019 WL 1323688, at *5 (plaintiff failed to establish continuous residence in the United States where he spent more time living with his wife and children in Pakistan than anywhere in the United States and regularly worked in Pakistan while there).

Finally, Kriegel urges the Court to conclude that she maintained continuous residency in the United States despite her frequent, extended absences because she only went to Germany temporarily to care for her mother. (Dkt. 33 at 10); (Dkt. 39 at 7). While the Court recognizes the hardships inherent in caring for an ailing parent, it cannot consider Kriegel's intent when determining her residence. *See Li*, 490 F.Supp.2d at 133 ("[Section 1101(a)(33)] makes clear that intent should not be considered."); 8 U.S.C. § 1101(a)(33) (defining residence as a person's "principal, actual dwelling place in fact, without regard to intent."). Additionally, there are no discretionary or hardship-based exceptions to the continuous residency requirement, and the Court declines to read such exceptions into the statute. *See, e.g., Mejia De Goico v. United States Citizenship & Immigr. Serv.*, 2024 WL 3064692, at *4 (D.N.J. June 20, 2024).

Based on a *de novo* review of the record, the Court concludes that a reasonable trier of fact could find that Kriegel has not satisfied the continuous residence requirements of §§ 1427(a) and 1430(a), making her ineligible for naturalization. The parties have not demonstrated a genuine issue of material fact on this matter. Therefore, summary judgment is granted in favor of Defendants and against Kriegel.

17

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [32] is granted, and Kriegel's Motion for Summary Judgment [33] is denied.

_____
Virginia M. Kendall
United States District Judge

Date: March 23, 2026